**J. P. TRANSPORTATION COMPANY, In re.**

Public Utilities Commission.

No. 4185.   Decided June 16, 1958.

## ORDER

The Commission coming now to consider the above entitled matter. together with the evidence adduced at the public hearing conducted on November 22, 1957; the written report of Attorney Examiner Russell J. Spetrino; the exceptions to said report filed on behalf of the Applicant; the reply thereto filed on behalf of the Protestants; and being otherwise fully advised in the premises and in compliance with §4903.09 R. C., hereby renders the following opinion:

NATURE OF THE APPLICATION and SUMMARY OF THE EVIDENCE:

The Commission hereby adopts as its own, as if fully rewritten herein, the paragraphs found under the headings "Nature of the Application" and "Summary of the Evidence" as the same are contained in the written report of its Attorney Examiner.

COMMISSION DISCUSSION:

The Commission hereby adopts as its own, as if fully written herein, the paragraphs found under the heading "Examiner's Discussion," as the same are contained in the written report of its Attorney Examiner. The following supplemental discussion is, however, deemed appropriate in view of the questions raised by the applicant in its Exceptions.

This matter is before the Commission upon the application of J. P. Transportation Company, Inc., for a Contract Motor Carrier Permit to serve Armco Steel Corporation. Protests against the granting of this

application were entered at the time of hearing by Hauselman Transportation Company and Wilson Motor Transit, both of whom are Common Carriers by Motor Vehicle holding Certificates of Public Convenience and Necessity issued by the Commission. The written report of the Commission's Attorney Examiner recommended that the within application for authority be denied for the reason that insufficient evidence was presented upon which it could be concluded that there exists on the part of this Shipper, a demand for motor carrier service which cannot be satisfied by the protesting carriers.

The applicant has taken exception to this conclusion for two reasons. First, it argues that the burden imposed by the Examiner was improper, since the present application was filed for the sole purpose of "transferring" this shipper from a permit upon which it is now listed, to the permit which the applicant proposes here to acquire. Second, the applicant has argued that if in fact this burden was properly imposed, it was also sustained by the evidence of record. There is, of course, no provision in our motor carrier laws for the transfer of a shipper from one contract motor carrier permit to another. The present application for authority was filed pursuant to the provisions of §§4923.05, 4923.06 and 4923.07 R. C. These sections prescribe the form and content of the application, the procedures to be followed in its prosecution, and the tests to be applied by the Commission when considering whether such application should be granted or denied. Sec. 4923.09 R. C., which section provides for the method by which an existing **permit** may be transferred from one holder to another, was not invoked; nor could this section have been invoked under the circumstances extant in this case.

Sec. 4923.07 R. C., provides, inter alia, that the Commission shall consider whether or not the proposed contract of carriage is in compliance with the law and the rules and regulations of the Commission relating thereto; whether or not the Applicant is a proper party to receive the authority which he requests; and whether or not the granting of the Permit will be consistent with the declared policy and purpose of the regulation of transportation by Common and Contract Carriers. In addition, the Commission must, in protested matters, apply certain additional tests set forth by the Supreme Court in several cases presented for its determination. The second and third paragraphs of the syllabus in the case of **Jones v. Public Utilities Commission, 141 Oh St 237,** were set forth in the report of the Commission's Attorney Examiner. Without again quoting this portion of the syllabus, suffice it to say that the Court has required an Applicant for Contract Carrier authority to present sufficient facts to enable the Commission to find that the granting of the application will comport with the declarations of policy contained in §§4921.03 and 4923.07 R. C. Furthermore, where such an application is protested, the Applicant is required to show that the service he proposes to render will fill some deficiency in the service of protesting carriers.

No valid reason has been advanced as to why the above tests should not be applied in the present matter. It is true that the Applicant proposes to succeed an existing Contract Carrier now authorized to serve this same Shipper. It is equally true that the provisions of the con-

tracts between the Applicant and this Shipper are identical with those contained in the contract between the Shipper and that Contract Carrier proposed to be succeeded. No evidence was presented, however, that the services proposed to be rendered under the present contract are identical with those now being performed; nor was an assertion even made that they are intended to be.

The Applicant has argued strenuously that the Commission has, for the past decade, permitted a Shipper already listed upon the Permit of one Contract Carrier, to be removed from this Permit and listed upon the Permit of another. The Commission does not now quarrel with this statement. However, we cannot conceive of how the denial of the present application will result in the abrogation by the Commission of this position. There is no apparent reason why a Shipper should not be permitted to avail itself of the services of a new Contract Carrier as a substitute for the services of one of its existing Contract Carriers, **provided, however, that the substitute carrier complies with the provisions of the law under which it voluntarily files application.** Such a requirement cannot seriously be considered to impose a mere "restrictive technical restraint" as suggested by counsel for the applicant.

A distinctly different situation would here have been presented if the evidence introduced in support of this application disclosed that the Pringle Trucking Company had been and was now performing certain specifically described services for Armco Steel Corporation; that these services were being performed to fill some deficiency in the service capable of being rendered by existing Common Carriers; that Pringle Trucking Company was expected to discontinue its service and had agreed to do so contingent upon the granting of this application; that the discontinuance thereof would again place this shipper in the position of requiring a motor carrier service upon which it had come to rely, and which could not be secured from existing Common Carriers: and that it intended and proposed that the Applicant should fill this demand for service.

The evidence of record does not, however, even suggest this to be the case. Instead, the record is devoid of any evidence as to the character or extent of service being rendered by Pringle Trucking Company; nor does it reflect the position which this carrier occupies in relation to all of the other carriers needed to satisfy the transportation demands of Armco Steel. The total lack of specific evidence in this respect was clearly disclosed by the testimony elicited upon cross-examination of the General Traffic Manager for Armco Steel Corporation. The following testimony, for example, appears at Pages 26 and 27 of the transcript:

"Q. Now are you acquainted with the service that you havetofore called upon Pringle to provide for you under Permit 415?

"A. In a general way, yes.

"Q. Can you tell me what destination points he has served out of Middletown for your company?

"A. I couldn't tell you. I don't have the—

"Q. You don't have any abstract or anything like that showing the particular shipments?

"A. Not with me, no.

"Q. Do you have any idea what the volume of shipments would be that he handled for your account?

"A. I couldn't tell you that. I don't have those figures."

The basis for the argument advanced by the Applicant is that, because of the fact that the respective contracts between Armco and Pringle and Armco and this Applicant are identical in their terms, no additional service would be **authorized.** Despite this fact, it cannot reasonably be concluded that the granting of the present application will in no way affect competition in this area, or will not result in a diversion of traffic from existing Common Carriers, the service of which is admittedly "generally satisfactory" (R. 32). Such a conclusion becomes even more difficult to draw in light of the testimony received that Armco Steel Corporation is offering little or no traffic to certain of its other existing Contract Carriers. (R. 27-31.)

The policies herein discussed with respect to this application for Contract Carrier authority are in complete accord with the procedural policies now followed by the Commission in analogous certificated matters. Where, for example, companion applications have been filed, the first of which seeks a grant of new authority, identical substantively with that authority sought to be abandoned by the second application, the Commission has required that the first such application be supported by evidence that the Public Convenience and Necessity require the service proposed to be rendered. This is true despite the fact that no **additional** authority will be outstanding. What formerly was authorized to be performed by one Common Carrier is proposed to be performed by another. The section of the law under which such an application is filed must simply be followed; this is precisely what has here been required.

In order to assure, however, that this Applicant is afforded full opportunity to present all of the evidence necessary to support its application, so that it will not be prejudiced if, in fact, a change in procedural policy has been adopted, the Commission is of the further opinion that this matter should be reopened for the purpose of permitting the Applicant to submit additional evidence in support of its application and will so order.

FINDINGS:

Upon a consideration of the evidence of record, the written report of its Attorney Examiner, the exceptions to said report and the reply thereto, the Commission hereby adopts, as if fully rewritten herein, the paragraphs found under the heading "Findings" as the same are contained in the written report of its Attorney Examiner, and makes the following additional finding:

That the Applicant should be afforded an additional opportunity to present evidence in support of its application in conformity with the discussion hereinabove set forth.

## ORDER

It is, therefore

ORDERED, That the within application of J. P. Transportation

Company, Inc. for a Contract Motor Carrier Permit, be, and the same hereby is, reopened and assigned for further hearing at 10:00 A. M. on Monday, July 7, 1958, at the Offices of the Commission.

THE PUBLIC UTILITIES COMMISSION OF OHIO

Entered in the Journal: Everett H. Krueger, Jr., Chairman
June 16, 1958          Ralph A. Winter
A true copy:           Edward J. Kenealy
W. E. Herron, Secretary          Commissioners